MUNICIPALITY OF MAYAGÜEZ, ETC., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, MAYAGÜEZ PART, FRANK VIZCARRONDO VIVAS, JUDGE, Respondent; CORONA BREWING CORPORATION, Intervener.

No. 64. Decided June 25, 1962.

A. *Nazario Janer* for petitioner. *Beverley, Castro & Rodríguez Lebrón* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The Cervecería Corona, Inc. sought from the Mayagüez Part of the District Court the refund of certain amounts which it paid under protest to the Municipality of Mayagüez by way of license taxes for the years 1957–58 and 1958–59. The tax was levied on the wholesale of beer and malt. The district court ordered the refund of $942.63 and $1,773.38, and the Mayagüez Part of the Superior Court affirmed. We issued certiorari.

The taxpayer contends that at the time the license taxes in question were levied the Municipality of Mayagüez was without power at law to tax it on that account. The judgment of the district court was affirmed on the grounds stated by the trial court as follows:

"Although the prohibition that had always existed against the municipalities to levy license taxes on the sale of products already subject to other insular excises was eliminated by the amendment made to § 99 in 1951 by Act No. 437 of that year, expressly authorizing the municipalities to levy license taxes on any article taxed by the Excise Act or any other insular excise tax law, *A. J. Tristani* v. *Municipality*, 76 P.R.R. 710, such express authorization was thereafter eliminated in 1956 upon the enactment on January 20, 1956 of the new Excise Act of Puerto Rico and § 99 was substituted by § 82 of the new Act.

"Apparently, through an error of editing the amendment which had been incorporated in 1951 in § 99 of the former Internal Revenue Law expressly authorizing the municipalities to levy municipal excise taxes on the articles taxed by the Excise Act *'or any other insular internal-revenue law,'* was omitted in the provisions of § 82. The latter phrase was left out of the wording of § 82 of the new Excise Act, the authorization granted to municipalities to levy municipal license taxes on articles already taxed by other insular excises being limited only to the articles subject to the provisions of the new Excise Act. (Original italics.)

"This was the wording of § 82 during fiscal years 1956–1957 and 1958–1959, without extending the authorization granted to the municipalities to levy excise taxes on other articles or products not enumerated in the new Excise Act such as beer and malt which pay excises under the provisions of the Alcoholic Beverages Act, it being inescapable to conclude, pursuant to the rule of construction laid down by the Supreme Court in the cases of *San Miguel & Cía.* v. *Diez de Andino, Treas.*, 71 P.R.R. 320; *Compañía Azucarera del Toa* v. *Municipality*, 76 P.R.R. 310; and *A. J. Tristani* v. *Municipality*, 76 P.R.R. 710, that the Municipality of Mayagüez was without power to require the plaintiff corporation to pay this excise on the wholesales transacted within the Municipality of Mayagüez in the afore-mentioned years."

When the Internal Revenue Law of Puerto Rico was enacted—Act No. 85 of August 20, 1925 (Sess. Laws, p. 584)— it was provided in § 99 that from and after the date of approval of that Act no municipal district or other administrative division of Puerto Rico could levy or collect any excise or local tax on any article subject to taxation under the provisions of that Act, but it provided that nothing contained therein shall be understood to repeal in whole or in part Act No. 26 of March 28, 1914 (Sp. Sess. Laws, p. 174), authorizing the municipalities of the Island of Puerto Rico to levy and collect, by way of license taxes, an annual tax to meet their budgetary expenses. This legislative declaration governed until May 15, 1951, when Act No. 437 of that year (Sess. Laws, p. 1254) went into effect.

For reasons which we need not consider in detail at this time, the Legislative Assembly deemed it necessary to explain the necessity of Act No. 437 and drafted the following Statement of Motives:

"Ever since the approval of the License Tax Act in 1914, it has always been the legislative policy that the taxes authorized by said Act be collected by the municipal corporations, both on merchandise and activities exempt from insular excises, as well as on merchandise and activities subject to such excises. When with the Internal Revenue Law of 1925 a Sales Act was approved levying insular excises on the same sales encumbered with the municipal excises levied under the License Tax Act, it was necessary to clarify that both sales taxes would continue to be collected. *For that purpose, Section 99 was added to the Internal Revenue Law.* Before said date, said Act had not contained any provision relative to the collection of the municipal excise taxes. The original Section 99 was drafted by the Legislature bearing in mind the decision in the case of Fantauzzi vs. Municipal Assembly of Arroyo, 295 Federal 803, for which reason a language was adopted *which have given rise to judicial interpretations that have defeated the legislative policy.* It is necessary to rephrase said legislative policy so as to avert any judicial construction inimical to the evident intent of the legislator." (Italics ours.)

Section 99, as amended by Act No. 437, provided that no municipal district could levy or collect any excise or local tax on any article subject to taxation under the Internal Revenue Law, "except the tax on the volume of business authorized by Act No. 26, approved March 28, 1914, known as 'Municipal License Tax Act,' as amended, the levying and collection of which by the municipalities and the Government of the Capital is hereby expressly authorized, and in said volume of business there shall be included the business operations in connection with articles taxable under this Act *or any other insular internal-revenue law.*" (Italics ours.)

The Internal Revenue Law of 1925 and, hence, § 99 thereof, as copied above, was repealed by the "Excise Act of Puerto Rico"—Act No. 2 of January 20, 1956 (Sp. Sess. Laws, p. 306). Section 82 thereof substituted the former § 99, and its original wording was substantially the same as that of the said section as amended by Act No. 437 of 1951, except that the final italicized phrase "or any other insular internal-revenue law was omitted." Section 82 was amended by Act No. 75 of June 25, 1959 (Sess. Laws, p. 207), which took effect on that date, restoring the matter omitted, although it was worded as follows: "*. . . or taxable under any commonwealth law.*"

The Corona's contention which was upheld by the trial court, is that between the effective date of Act No. 2 of January 20, 1956, 90 days after its approval, and June 25, 1959, the effective date of the amendment to § 82 thereof, the Municipality of Mayagüez was without power at law to levy and collect the license taxes levied for the years 1957–58 and 1958–59 because of the omission of the phrase in question. It contends that inasmuch as beer is taxable by the Beverages Act and not by the Excise Act, the omission of that phrase during such period barred taxation.

The Spirits and Alcoholic Beverages Act—Act No. 6 of June 30, 1936 (Sp. Sess. Laws, p. 44)—provides in § 100,

in connection with the tax on alcoholic beverages, substantially the same as in § 99 of the Internal Revenue Law before being amended.[1] The same reservation made by the lawmaker in favor of the municipalities in relation to the taxes. under the Internal Revenue Law of 1925, upholding their taxing power under the License Tax Act, was also made in. the Beverages Act as respects the taxes levied thereunder. Hence, the exposition made by the Legislative Assembly in the Declaration of Policy of Act No. 437 of 1951 respecting § 99, has the same validity with respect to § 100 of this other Act.

Legislation was enacted in 1955, also preceded by a Declaration of Policy, in which the Legislative Assembly sought to strengthen even more the taxing power of municipalities under the License Tax Act. Act No. 54 of June 7, 1955 (Sess. Laws, p. 196) amended subd. 4 of § 26 of the Municipal Law of 1928 (No. 53, Sess. Laws, p. 334) which conferred power to the municipalities to impose reasonable taxes and excise taxes, in order to add that, for the purposes of the application of the License Tax Act, the municipal assembly was authorized to include, through ordinance or resolution, any industrial or commercial establishment not listed in the said Act. This provision was effective for the fiscal year 1955–1956. By Act No. 4 of December 7, 1955 (Sp. Sess. Laws, p. 62) that provision was eliminated from § 26 of the Municipal Law, but by Act No. 44 of June 18, 1958 (Sess. Laws, p. 69) it was restored to its original form, effective as of the fiscal year 1957–1958.

---

[1] "On and after the date of the approval of this Act, no municipal district or administrative division of Puerto Rico may levy and collect any local tax whatever on products subject to taxation in accordance with the provisions of this Act; *Provided,* That nothing herein contained shall be interpreted in the sense of repealing, either wholly or in part, the act entitled 'An Act authorizing the municipalities of the Island of Puerto Rico to levy and collect annual taxes to be used in meeting their budgetary expenses, and for other purposes'."

Apart from the legislative history set forth in *The Texas Co. (P. R.), Inc.* v. *Municipality*, 81 P.R.R. 487, we held, ratifying the decision in *Mun. of San Juan* v. *P. R. Coal Co.*, 28 P.R.R. 245 (1920), that "wholesale stores" contained in Group A of § 2 of the License Tax Act constitutes a taxable item in itself, no matter the product offered for sale, irrespective of the list of businesses and articles enumerated in that Act. We said that we would not be justified, in the absence of a showing that the doctrine of *P. R. Coal Co.* was clearly erroneous and untenable at law, in altering that interpretation to adopt a more restrictive one against the taxing power of the municipalities, "in the light of the clear and precise declarations made by the Legislative Assembly from time to time for the purpose of strengthening rather than weakening the taxing power of the municipal governments granted by the License Tax Act." We concluded that every *commercial* wholesale establishment pays tax, whatever product or article is sold therein.

■ The taxpayer herein sells beer and malt at wholesale in the Municipality of Mayagüez. It is agreed that if these products were taxable under the Excise Act the municipality would have had power to levy the license tax, but inasmuch as they are taxable under another act it lacks such power. It does not argue that before the enactment of Act No. 2 of 1956 and as of June 25, 1959 after the enactment of Act No. 75, such power has existed, even though the product were not taxable under the Excise Act.

■■ It thereby commits an error of approach. The power of the Municipality of Mayagüez under the law to levy the taxes herein involved resides in the Municipal License Tax Act. It does not reside either in Act No. 2 of January 20, 1956, bearing on general taxes, nor in the Spirits and Alcoholic Beverages Act, No. 6 of June 30, 1936. In the Declaration of Policy of Act No. 437 of 1951 our Legis-

lative Assembly spoke too eloquently on the scope of this taxing power of the municipalities for its words to be ignored. It also spoke eloquently in another subsequent Declaration of Policy in approving Act No. 54 of 1955. The case of *San Miguel & Cía.* v. *Diez de Andino*, 71 P.R.R. 320, invoked by the taxpayer and on which the ruling rested, was decided by this Court on May 4, 1950, before the enactment of Act No. 437 and its Declaration of Policy. That case involved a hydraulic-cement business and the license tax covered the year 1946–1947. *Compañía Azucarera del Toa* v. *Municipality*, 76 P.R.R. 310, which involved a license tax on the sugar business for 1950–1951, was decided subsequent thereto. In this case, referring to the Declaration of Policy of Act No. 437 (at p. 313), we said that the considerations embodied in that Declaration of Policy as to what has been the legislative intent before the original enactment of § 99, were not retroactively conclusive, nor did they overcome the validity of the interpretation placed upon that section by this Court in specific cases. However, that Declaration of Policy, we say now, has great weight and should not be ignored in deciding cases arising subsequent thereto. In *A. J. Tristani* v. *Municipality*, 76 P.R.R. 710, we gave full efficacy to Act No. 437 by upholding the tax therein levied. Although it is true that upon repeal of the entire former Internal Revenue Law by the new Excise Act § 99 thereof was repealed, the Declaration of Policy of Act No. 437, in so far as it contains the declaration of a legislative intent, has not lost its validity. On the contrary, the new Act gave it full meaning.

■ Irrespective of the foregoing, the very Beverages Act saved in § 100 thereof the taxing power of the municipalities under the License Tax Act in connection with the excises levied on alcoholic beverages. The omission through error or otherwise of the phrase *"or any insular internal-revenue law"* in § 82 of the new Excise Act, on which the taxpayer

relies to maintain that the Municipality of Mayagüez was without power at law to tax it, is immaterial as respects the taxes in litigation.

For the reasons stated, the judgment appealed from is set aside and the record is returned to the trial court with instructions to reverse the judgments rendered by the Mayagüez Part of the District Court ordering the refund of the taxes claimed, and to render another judgment dismissing the complaints, with other pertinent pronouncements on costs and attorney's fees.